**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

SEQUOIA FORESTKEEPER, et al.

                                CASE NO. CV F 11-679 LJO DLB

                                **SUMMARY JUDGMENT DECISION ON**
Plaintiffs,                     **JURISDICTIONAL ISSUES**

vs.

THOMAS TIDWELL, in his official capacity
as Chief of the United States Forest Service,
and the UNITED STATES FOREST
SERVICE,

                Defendants.

_____/

**INTRODUCTION**

          This action challenges two of the public notice, comment, and administrative appeal regulations

that the defendant United States Forest Service ("Forest Service") promulgated to implement the Forest

Service Decisionmaking and Appeals Reform Act of 1992, Pub. L. 102-381, Title III,§ 322, 106 Stat.

1419 (16 U.S.C. §1612 note) (October 5, 1991) ("ARA").  The challenged provisions are codified at 36

1

1   C.F.R. §§215.4(a) and 215.12(f) (2003).[1]  Before reaching the merits of Plaintiffs'[2] challenge to the

2   regulations, this Court must address the jurisdictional issues raised by the parties.  First, the Court shall

3   consider whether Plaintiffs have standing to pursue this action.  Second, the Court must determine

4   whether this action is ripe for judicial review.  Third, this Court shall examine the Forest Service's

5   alternative argument that this action is barred by the statute of limitations.  Finally, this Court shall

6   entertain the Forest Service's argument that the Consolidated Appropriations Act of 2012

7   ("Appropriations Act") renders this action prudentially moot.  Having considered the parties' arguments,

8   this Court finds that plaintiffs have established standing to challenge the regulations at issue in this case

9   and that their challenge to regulations is ripe for review.  This Court rejects the Forest Service's

10   alternative argument that this action is time-barred.  Finally, this Court denies the Forest Service's

11   motion to dismiss this action as prudential moot based on the Appropriations Act.  Accordingly, and for

12   the following reasons, this Court GRANTS summary adjudication in favor of Plaintiffs on the

13   jurisdictional issues discussed in this opinion.

14                                                    **BACKGROUND**

15                                          **ARA and the 215 Regulations**

16          Prior to 1992, the Forest Service "provided a post-decision administrative appeals process, 36

17   C.F.R. pt. 217, for agency decisions documented in a 'decision memo,' 'decision notice,' or 'record of

18   decision.'" *Earth Island v. Ruthenbeck*, 490 F.3d 687, 691 (2007).  In March 1992, the Forest Service

19   proposed a new regulation that would have eliminated post-decision administrative appeals for all

20   decisions except those approving forest plans or amendments or revisions to forest plans.  *Id*.  This

21   "proposal was greeted with considerable protest, and environmental groups decried the loss of

22   administrative review." *Id*.

23          In response, Congress enacted the ARA later in 1992.  Among other things, the ARA required

24   the Forest Service to establish a notice, comment and appeal process for "proposed actions of the Forest

25   ───────────────

26   [1] Unless otherwise noted, this Court's citation to a "Section" refers to a section within Chapter 36 of the Code of Federal Regulations.

27   [2] Plaintiffs are local and regional environmental groups.  They include Sequoia Forestkeeper, Conservation Congress, Earth Island Institute, Oregon Wild, Cascadia Wildlands, Ouachita Watch League, Utah Environmental Congress, Western

28   Watersheds Project, and Wildearth Guardians.  This Court refers collectively to the plaintiffs as "Plaintiffs."

1  Service concerning projects and activities implementing land and resource management plans developed

2  under the Forest and Rangeland Renewable Resources Planning Act of 1974...and [to] modify the

3  procedure for appeal of decisions concerning such projects." ARA §322(a).

4       After the ARA was passed, the Forest Service published a final rule revising the notice, comment

5  and appeal procedures. 68 Fed. Reg. at 33,582 (June 4, 2003) ("2003 Rule").  This rule governs "projects

6  and activities implementing land and resource management plans on National Forest System lands." *Id*.

7  The new regulations are codified at 36 C.F.R. §215 et seq. ("215 Regulations").[3]

8       Plaintiffs argue that two the 215 Regulations are manifestly contrary to the ARA.  Specifically,

9  Plaintiffs claim that the Forest Service has violated the ARA § 322(a) and (c) by issuing Sections

10  215.12(f) and 215.4(a), which exempt all decisions that are categorically excluded from National

11  Environmental Policy Act ("NEPA") analysis[4] but which implement forest plans and are approved with

12  "decision documents" from notice, comment and appeal.  Plaintiffs allege that the Forest Service is

13  applying these regulations impermissibly to exclude many projects from public notice, comment and

14  appeal.  Plaintiffs request this Court to find that the Forest Service violated the ARA by enacting

15  Sections 215.4(a) and 215.12(f), invalidate the regulations, and issue a nationwide injunction to enjoin

16  the Forest Service from implementing them.  The challenged regulations read, in relevant part:

17       The following decisions and actions are not subject to appeal under this part, except as
        noted: . . . (f) Decisions for actions that have been categorically excluded from
18       documentation in an EA or EIS . . . .

19  36 C.F.R. § 215.12 (f).

20       The procedures for legal notice (§ 215.5) and opportunity to comment (§ 215.6) do not
        apply to:   (a) Projects and activities which are categorically excluded from
21       documentation in an [EIS] or [EA] . . .

22  36 C.F.R. § 215.4(a).

23

_____

24       [3]Although the 215 Regulations include additional regulations that are not challenged in this action, this Court may

25  sometimes refer to the challenged actions as the 215 Regulations.

26       [4]For certain projects or permits that affect the environment, NEPA requires the preparation of either an
    Environmental Assessment ("EA") or an Environmental Impact Statement ("EIS").  An agency is not required to prepare an
    EIS or an ES when the proposed action falls within a "categorical exclusion" to NEPA's requirements. See, 40 C.F.R.
27  §§1501.4(b), 1502, 1508.4, 1508.9.  Categorical exclusions are "actions which do not individually or cumulatively have a
    significant effect on the human environment and which have been found to have no such effect in [NEPA] procedures adopted
28  by a Federal agency." 40 C.F.R. §1508.4.

**Prior Challenge to the Regulations**

The regulations at issue in this action have been challenged previously.  The procedural history of the prior challenge is instructive on legal issues raised in this action.  Accordingly, this Court briefly summarizes the history of the prior action and its three published court opinions.

*Earth Island Institute v. Penguilly*

Plaintiffs Earth Island Institute and Sequoia Forestkeeper, among others, challenged the 215 Regulations in a separate challenge styled *Earth Island Institute v. Penguilly*, 376 F. Supp. 2d 994 (E.D. Cal. 2005) ("*Penguilly*").  In *Penguilly*, the court found that the plaintiffs had standing to challenge the 215 Regulations based on the declaration of Jim Bensman ("Mr. Bensman"), who is a member of one of the plaintiff organizations.  In that action, Mr. Bensman declared:

> that he is a regular visitor to many of the country's national forests, including several located in California.  In addition to using and enjoying national forests, Bensman has "commented on [approximately] a thousand Forest Service projects.  Over there years he has also appealed decisions of the Forest Service and has, at times, been successful.  Since the promulgation of the new regulations, Bensman affies that he has not been able to appeal projects that he and Heartwood otherwise would have appealed.  Further, in August 2003 Bensman and Heartwood submitted comments on a Forest Service proposal. Not knowing whether his comments constituted "substantive comments" under the new regulations, Bensman submitted an addendum to his earlier comments identifying himself as "an interested and affected party for this project."  Later Bensman and Heartwood filed an appeal of the project.  The appeal was dismissed because, according to the Regional Forester, Bensman and Heartwood did not have "standing under the 2003 appeal regulations," and "the comments received during the Notice and Comment period [did] not meet the definition of substantive comments.

*Penguilly*, 376 F. Supp. 2d 994, 1000-1001.  The district court found Mr. Bensman's declaration "has established sufficient injury that is fairly traceable to the actions of the Forest Service in implementing the ARA[.]" Id. at 1001.  The court reasoned:

> Bensman has gone beyond speculative or conjectural injury due to the Forest Service's regulations implementing the ARA.  Standing in this case is an analytical step away from use and enjoyment of national forests.  Any harm to Plaintiffs' use and enjoyment comes from harm to the environment that in turn comes from being unable to effectively challenge Forest Service projects in national forests.

*Id*.  The district court rejected the Forest Service's argument that Mr. Bensman's declaration was insufficient because it was not tied to a specific project:

> This action challenges the regulations adopted by the Forest Service in response to the ARA–not a specific project in a specific forest–and reference to a specific forest is not needed to ground the contention for purposes of showing injury in fact.  That Bensman

4

and his organization have been precluded from appealing Forest Service projects that they would have appealed under the old regulations and that the projects have therefore gone forward and impaired Plaintiffs' use and enjoyment is fairly traceable sufficient injury to clear the standing hurdle.

*Id*.

The court further found that plaintiffs' challenge to the 215 Regulations was ripe for review. The court found that "there can be little doubt that the eight regulations challenged by Plaintiffs are 'final actions' by the Forest Service for purposes of the APA. The regulations are the Forest Service's definitive position on how to best implement the ARA and have been enforced on numerous occasions." *Penguilly*, 376 F. Supp. 2d at 1002. In determining whether review was ripe, the court focused on the plaintiffs' facial challenge of the 215 Regulations:

> The purpose of the finality requirement would not be served by disallowing a facial challenge in this context. Were the Court to rule that these regulations are not ripe for decision because they are being facially challenged, Plaintiffs would be faced with bringing multiple lawsuits in multiple jurisdictions in order to challenge the regulations as they are applied to specific projects–and the Forest Service faced with defending against them. This facial challenge promotes judicial economy and is sufficiently particular to avoid judicial foray into the hypothetical.

*Id*.

After concluding that the plaintiffs had standing and the action was ripe for review, the court turned to the merits of the action. After considering the parties' arguments, the *Penguilly* court found five of the 215 Regulations invalid, including the two at issue in this action. The court found that those regulations were manifestly contrary to their governing statute, the ARA. The court severed the invalid provisions from the 215 Regulations and issued a nationwide injunction enjoining their implementation. *See id.*

### *Earth Island Institute v. Ruthenbeck*

The Forest Service appealed the *Penguilly* decision, which resulted in the Ninth Circuit opinion of *Earth Island Institute v. Ruthenbeck*, 490 F.3d 697 (2006) ("*Ruthenbeck*"). In *Ruthenbeck*, the Ninth Circuit agreed with the district court that the plaintiffs had established standing. The *Ruthenbeck* court found that plaintiffs had established "injury in fact" because "Bensman's preclusion from participation in the appeals process may yield diminished recreational enjoyment of the national forests." 490 F.3d at 693. In addition, the *Ruthenbeck* court found that Earth Island "has also alleged sufficient procedural injury to support standing, relying on the argument that the ARA is a procedural statute giving rise to

5

a procedural injury within the 'zone of interests' Congress intended to protect." *Id*.  The court reasoned that the 215 Regulations "are procedural regulations governing the opportunity for public comment.  The ARA does not address any substantive Forest Service program and governs only the process."  *Id*.  Because the ARA and NEPA are procedural statutes, the court concluded: "Procedural and informational injuries may be the basis for injury in fact for standing purposes." *Id*.  Because Earth Island was precluding from appealing the Burnt Ridge Project because the Forest Service applied Section 215.12(f), "the loss of that right of administrative appeal is sufficient procedural injury in fact to support a challenge to the regulation." *Id*.

"While Earth Island ...established the sufficient injury for standing purposes," the Ninth Circuit found that "it has not shown the sort of injury that would require immediate review of" any of the regulations challenged, except for those associated with the Burnt Ridge Project. *Ruthenbeck*, 490 F.3d at 696.  The court emphasized that a regulation is not ripe for review "until the scope of the controversy has been reduced to more manageable proportions, and *its factual components fleshed out, by some concrete action applying the regulation* to the claimant's situation in fashion that harms or threatens to harm him." *Id*. (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990)) (emphasis in *Ruthenbeck*).  The Burnt Ridge Project was the only project specifically referenced in the complaint.  Only Sections 215.4(a) and 215.12(f) applied in the context of that project.  Because the record had been developed factually for Sections 215.4(a) and 215.12(f), review of those regulations was ripe.  On the other hand, the factual components for all of the challenged regulations had not been fleshed out.  "The record [was] speculative and incomplete with respect to the remaining regulations, so the issues are not fit for judicial decision[.]" *Ruthenbeck*, 490 F.3d at 696.

Having found that Sections 215.4(a) and 215.12(f) were ripe for review, the *Ruthenbeck* court considered the merits of Earth Island's challenge to those sections only.  The court affirmed the district court's invalidation of Sections 215.4(a) and 215.12(f) and the nationwide injunction against their enforcement, finding that these regulations were "manifestly contrary to both the language and the purpose of the ARA." *Id*. at 699.  The court remanded the action with instructions to vacate the judgment and injunction with respect to the remaining regulations for "lack of controversy ripe for review." *Id*.

///

6

1      *Summers v. Earth Island Institute*

2          The Supreme Court of the United States granted review of the *Ruthenbeck* decision on the issue

3  of standing, resulting in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) (*"Summers"*).  The

4  Supreme Court focused on a fact that had not been addressed directly by the lower courts: The parties

5  settled their dispute over the Burnt Ridge Project prior to the *Penguilly* decision.  Although the Burnt

6  Ridge Project was settled, and after noting that "the Burnt Ridge timber sale is not an issue in this case,"

7  376 F. Supp. 2d at 999, the district court went on to adjudicate the merits of Earth Island's challenges.

8  Similarly, the Ninth Circuit relied on the Burnt Ridge Project for its ripeness decision.  As discussed

9  above, the Ninth Circuit found that the regulations not at issue in the Burnt Ridge Project were not ripe

10  for adjudication because there was no "case or controversy" before the court as to those regulations to

11  sustain a facial challenge.  *Ruthenbeck*, 490 F.3d at 696.  The Ninth Circuit considered the merits of the

12  two regulations applicable to the Burnt Ridge Project and affirmed the district court's determination that

13  they were contrary to law.

14          The *Summers* Court found that the plaintiffs[5] lacked standing to challenge the 215 Regulations.

15  The Court found that although one declaration from a plaintiff organization member, Ara Marderosian

16  ("Mr. Marderosian"), was conceded to be sufficient to establish Article III standing with respect to the

17  Burnt Ridge Project, "Marderosian's injury in fact with regard to that project [was] remedied" when the

18  parties settled. *Summers*, 555 U.S. at 494.  Because the Burnt Ridge Project had been settled, the plaintiff

19  organizations could not rely on it to establish standing.  The Court explained: "We know of no precedent

20  for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or

21  threatened action but has settled that suit, he retains standing to challenge the basis for that action (here,

22  the regulation in the abstract), apart from any concrete application that threatens imminent harm to his

23  interests.  Such a holding would fly in the face of Article III's injury-in-fact requirement." *Id.*

24          The Court also found that the plaintiffs "identified no other application of the invalidated

25  regulations that threatens imminent harm to the interests of their members." *Id*. at 495.  Specifically, Mr.

26  Bensman's declaration was insufficient to establish standing for a number of reasons.  Mr. Bensman

27

28      [5] Although technically "appellees" in *Ruthenbeck* and "respondents" in *Summers*, this Court uses "plaintiffs" to identify the environmental association plaintiffs when summarizing these opinions for the sake of consistency.

7

declared that he had suffered injury in the past from development in the national forests.  "That does not suffice for several reasons: because it was not tied to application of the challenged regulations, because it does not identify any particular site, and because it relates to past injury rather than imminent future injury that is sought to be enjoined." *Id*.  Mr. Bensman's statement that he had visited many national forests and plants to visit several forests in the future was also insufficient to establish standing.  The Court faulted "the failure to allege any particular timber sale or other project claimed to be unlawfully subject to the regulations [which] will impede a specific and concrete plan of Bensman's to enjoy the national forests." *Id*.  Moreover, although Mr. Bensman does identify with specificity a series of projects in the Allegheny National Forest, he failed to assert "any firm intention to visit their locations." *Id*.  For these reasons, Mr. Bensman's affidavit failed to establish standing.

The Court further rejected the plaintiffs' position that they had standing to challenge the 215 Regulations based on the alleged procedural injury.  The plaintiffs argued that they suffered an injury in fact because the regulations denied them the ability to file comments on some Forest Services actions, and that they will continue to be so denied.  The Court found that the:

> deprivation of a procedural right without some concrete interest that is affected by the deprivation–a procedural right *in vacuo*–is insufficient to create Article III standing.  Only a person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.  Respondents alleged such injury in their challenge to the Burnt Ridge Project, claiming that but for the allegedly unlawful abridged procedures they would have been able to oppose the project that threatened to impinge on their concrete plans to observe nature in that specific area.  But Burnt Ridge is now off the table.

*Summers*, 555 U.S. at 496-97.  Because Burnt Ridge was "off the table," and Mr. Bensman's declaration was insufficient, the plaintiffs had failed to establish that they had standing to pursue their challenge of the 215 Regulations.  Having ruled on the issue of standing, the Court did not reach the issues of whether the challenge to the regulations ripe or whether the nationwide injunction would be an appropriate form of relief. *Id*. at 500-01.

**Instant Action**

The complaint asserts a facial challenge to Sections 215.4(a) and 215.12(f) pursuant to the Administrative Procedures Act, 5 U.S.C. §701 et seq. ("APA").  Although it is a facial challenge, Plaintiffs identify several Forest Service projects or permits that the Forest Service has implemented

8

these allegedly illegal regulations.  Plaintiffs' complaint specifically includes allegations that the challenged regulations have been implemented in the following projects and permits, among others:

(1)  The 100 Giants Improvement Project, a logging project on the sequoia National Forest in California, approved on September 10, 20120.

(2)  Two recreation use permits for mountain biking, including the Mountain & River Adventures Outfitting and Guiding Ten-Year Permit and Sierra South, Inc. Outfitting and Guiding Ten-Year Permit, on the Sequoia National Forest, approved on February 7, 2008.

(3)  The Big Mountain Roads Removal Project on the Shasta-Trinity National Forest in California, approved on September 10, 2010.

(4)  The Jack Creek and Square Rock Burn Units, a prescribed fire project on the Ouachita National Forest in Arkansas, approved March 16, 2011.

(5)  The Skyline Tractor Salvage timber project on the Manti-La Sal National Forest in Utah, approved on February 4, 2011.

(6)  The Slate Creek Corrals Special Use Permit Project on the Bridger-Teton National Forest in Wyoming, approved on June 9, 2010.

The parties filed cross-summary judgment motions, which have been briefed fully.  In addition, the Forest Service has moved to sever and remand Plaintiffs' challenges to those Forest Service projects and permits that are outside the Eastern District of California.

Having considered the parties' arguments, exhibits, the administrative record and the applicable legal authorities, this Court found these motions suitable for a decision without oral argument. Accordingly, this Court vacated the February 2, 2012 hearing pursuant to Local Rule 230(g).  This Court issues the following order to address the jurisdictional issues raised in the summary judgment motions. This Court shall address the Forest Service's motion to sever separately.  If this Court finds that it has jurisdiction over this action, this Court shall address the merits of Plaintiffs' claims separately.[6]

---

[6]This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, affidavits, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the

9

1

**STANDARD OF REVIEW**

2      Fed. R. Civ. P. 56 permits a "party against whom relief is sought" to seek "summary judgment

3  on all or part of the claim."   In a summary judgment motion, a court must decide whether there is a

4  "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398

5  U.S. 144, 157 (1970).   A party seeking summary judgment/adjudication bears the initial burden of

6  establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

7  323 (1986).   The moving party may satisfy this burden in two ways: (1) by presenting evidence that

8  negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

9  party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving

10  party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322.   "The

11  judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and

12  any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

13  to judgment as a matter of law." Fed. R. Civ. P. 56(c).   "If the party moving for summary judgment

14  meets its initial burden of identifying for the court those portions of the material on file that it believes

15  demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the

16  nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec.*

17  *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ.

18  P. 56(e)).

19      To establish the existence of a factual dispute, the opposing party need not establish a material

20  issue of fact conclusively in its favor, but "must do more than simply show that there is some

21  metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

22  574, 587 (1986).   It is sufficient that "the claimed factual dispute be shown to require a jury or judge to

23  resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv.*

24  *Co*., 391 U.S. 253, 289 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631.   The nonmoving party must "go

25  beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and

26

27
effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed,
considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does

28  not rule on evidentiary matters in a summary judgment context, unless otherwise noted.

1    admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477

2    U.S. at 324. Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts

3    showing that there is a genuine issue for trial."  "In the absence of specific facts, as opposed to

4    allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment

5    motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.

6    1988).

7

### DISCUSSION

### **Whether Plaintiffs Lack Standing to Challenge the ARA**

8

9          The first issue the parties address is whether Plaintiffs have standing to challenge the ARA.

10    Plaintiffs affirmatively move for judgment on grounds that they have standing to pursue this action,

11    whereas the Forest Service moves for judgment in their favor on grounds that Plaintiffs lack standing.

12          Pursuant to the limited jurisdiction of federal courts imposed by Article III of the U.S.

13    Constitution, "[e]xcept when necessary in the execution of that function, courts have no charter to review

14    and revise legislative and executive action." *Summers*, 555 U.S. at 1148.  This limitation is "founded

15    in concern about the proper–and properly limited–role of the courts in a democratic society." *Warth v.*

16    *Seldin*, 422 U.S. 490, 498 (1975).  Accordingly, this Court's jurisdiction"depends on the existence of a

17    'case or controversy.' " *GTE California, Inc. v. Federal Communications Commission*, 39 F.3d 940, 945

18    (9th Cir.1994).

19          To satisfy the Constitution's standing requirement, "a plaintiff must show (1) it has suffered an

20    'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

21    hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

22    likely, as opposed to merely speculative, that there injury will be redressed by a favorable decision."

23    *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180-81 (2000) ("*Laidlaw*"); *Lujan*

24    *v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("*DOW*"); *Nelson v. NASA*, 530 F.3d 865, 873 (9th

25    Cir.2008).

26          As the parties seeking to invoke federal jurisdiction, Plaintiffs bear the burden of demonstrating

27    that they have standing in this action. *DOW*, 504 U.S. at 561.  Plaintiffs must demonstrate standing "for

28    each claim [they] seek[ ] to press" and for "each form of relief sought." *DaimlerChrysler Corp. v. Cuno*,

11

547 U.S. 332, 352 (2006) (quoting *Laidlaw*, 528 U.S. at 185, 120 S.Ct. 693). "The plaintiff bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.' " *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir.2009) (quoting *DOW*, 504 U.S. at 561, 112 S.Ct. 2130).

"When the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."*DOW*, 504 U.S. at 562 (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975)). Plaintiffs could establish the injury in fact requirement by showing that "absent the [ARA], there is a substantial probability that they would [not be injured] and that, if the court affords the relief requested, the [injury] would be removed." *Warth*, 422 U.S. at 504.

The parties agree that Plaintiffs, environmental associations, may establish standing through their members. "Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth*, 422 U.S. at 511. To establish associational standing, each industry plaintiffs must establish the following three prongs: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

The first prong requires Plaintiffs to establish the "irreducible constitutional minimum" requirements of injury; namely that at least one of its members:

> suffered an "injury in fact"–an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of–the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third part not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997). To establish associational standing, Plaintiffs must "submit affidavits...showing, through specific facts...that one or more of their members would...be 'directly affected' by the allegedly illegal activity." *Summers*, 129 S.Ct. 1142, 1151-52 (2009) (quoting *DOW*, 504 U.S. 563); *see also*, *Rocky Mountain Farmers Union v. Goldstene*, – F. Supp. 2d. –, 2011 WL 6934797, * 22 (E.D. Cal. 2011). Plaintiffs "can demonstrate standing only if application of the

1  regulations by the Government will affect *them* in the manner described above." *Summers*, 555 U.S. at

2  494 (emphasis in original).

3       Plaintiffs submit a number of declarations from their members to establish standing. "While

4  generalized harm to the forest or the environment will not alone support standing, if that harm in fact

5  affects the recreational or even the mere aesthetic interests of the plaintiff, that will suffice." *Summers*,

6  555 U.S. at 494 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)). Each of these declarants

7  emphasizes the harm each project has caused, or is expected to cause, to his or her recreational and

8  aesthetic interests in the forest. A summary of these declarations is presented below.

9                              **Trail of 100 Giants**

10       Plaintiff Sequoia Forestkeeper provides two standing declarations from Ara Marderosian ("Mr.

11  Marderosian"), a member of Sequoia Forestkeeper, to establish standing regarding the Trail of 100

12  Giants project in the Sequoia National Forest.

13       Mr. Marderosian declares that he has been injured in the past by the Forest Service's failure to

14  provide notice, opportunity to comment, and right to appeal decisions by the Forest Service to allow

15  hazard tree logging along the Trail of 100 Giants in the Giant Sequoia National Monument, resulting in

16  the felling and removal of many trees and thereby injuring his aesthetic interests. The Forest Service

17  has again failed to provide notice, opportunity to comment, and right to appeal a new project proposed

18  for the Trail of 100 Giants, one of the Forest Service projects challenged in this litigation. The Forest

19  Service failed to mail a notice to Mr. Marderosian regarding the proposed project. Instead, after only

20  posting a small letter to the trailhead and the ranger station for two weeks, the Forest Service issued its

21  Decision Memorandum to exempt the project from appeal. Mr. Marderosian declares that his aesthetic

22  interests would be injured by the trail construction and asphalt paving proposed in this grove of giant

23  sequoias. Mr. Mardersian further declares that he intends to visit this site on November 2, 2011. Mr.

24  Marderosian's declaration establishes his frequent visits to the sites, and its clear that he has an intention

25  to continue these frequent visits in the future.

26                         **10-Year Outfitter Special Use Permits**

27       Mr. Marderosian also claims injury based on the Forest Service's failure to provide notice,

28  opportunity to comment, and right to appeal two 10-year outfitter special use permits. Mr. Marderosian

1  declares that his interests are harmed by the outfitter permits, which authorize the guiding and use of

2  mountain bicycles through groves of giant sequoias and inventoried roadless areas, resulting in displaced

3  soils, erosion, and intrusion into Mr. Marderosian's solitude, thereby harming his aesthetic interests, as

4  well as his and Sequoia Forestkeeper's interests in establishing new Wilderness Areas where mountain

5  biking is now permitted.

6       Another Sequoia Forestkeeper member, Carla Cloer ("Ms. Cloer") also submits a declaration

7  regarding one of the 10-year outfitter special use permits.  Ms. Cloer declares that she has suffered

8  similar injury to her interests in one of these outfitter permits on and along trails that she has used every

9  years since 1956.  Although Ms. Cloer has been monitoring recreational trail issues for many years,

10 especially in giant sequoia groves and inventoried roadless areas, the Forest Service failed to provide

11 her notice of or the decision to authorize the Mountain & River Adventures 10-year permit extension,

12 allowing the outfitter to guide mountain bicycles on several trails in giant sequoia groves and inventories

13 roadless areas.  Ms. Cloer's aesthetic and recreational injuries from mountain biking on several trails

14 used by the permittee include displaced soils, erosion, and intrusion into solitude as she rides her horses

15 through these trails.  Ms. Cloer is also concerned that mountain biking will permanently destroy the

16 wilderness potential for Slate Mountain Inventoried Roadless Area, damaging one of the two remaining

17 roadless areas in the Giant Sequoia National Monuments.

18                     **Slate Creek Corrals Range Improvement Project**

19       Jonathan Ratner ("Mr. Ratner"), a member of plaintiff Western Watersheds Project, declares that

20 he has been and will continue to be injured by the Forest Service's authorization of Slate Creek Corrals

21 Range Improvement Project.  Mr. Ratner declares that the project's "range improvements" harm his

22 ability to observe wildlife by further restricting a migration route where he views and studies pronghorn

23 and elk personally and as a biologist.  Mr. Ratner and Western Watersheds Project were not permitted

24 to appeal the decision memorandum for the project.

25                        **Skyline Tractor Salvage Project**

26       Plaintiff Utah Environmental Congress member Kevin Mueller ("Mr. Mueller") submits a

27 declaration related to the Skyline Tractor Salvage Project.  Mr. Mueller enjoys hiking through and

28 observing non-game wildlife that thrives in snag-rich forest, most of which would be eliminated by

1   implementation of the project.  Mr. Mueller's recreational interest in the unique, undeveloped, and

2   removed backcountry area would also be injured by the activities proposed in Unit 2, which would allow

3   logging in the Bear Creek Inventoried Unroaded/Undeveloped Area that Utah Environmental Congress

4   has proposed for designation as Wilderness.  Mr. Mueller and Utah Environmental Congress were not

5   permitted to appeal the decision memorandum for the Skyline Project.

6                              **Jack Creek and Square Rock Burn Units**

7            Jerry Williams ("Mr. Williams") is a member of plaintiff Ouachita Watch League.  He declares

8   that he would be injured by the prescribed burning projects proposed in the Jack Creek and Square Rock

9   Burn Units of the Ouachita National Forest.  The Forest Service's burning practices, such as those in

10  Jack Creek and Square Rock Burns, would harm various species that Mr. Williams observes, and

11  interferes with his use and enjoyment by causing severe habitat manipulation and damage.  Mr. Williams

12  and Ouachita Watch League were not permitted to appeal the decision memorandum for the burn

13  projects.

14                                  **Big Mountain Project**

15           Denise Boggs ("Ms. Boggs"), member of plaintiff Conservation Congress, declares that her

16  aesthetic and recreational interests in hiking through and viewing wildlife, are injured by the Big

17  Mountain Project, which permits logging of large trees along roads and in critical habitat for the northern

18  spotted owl.  Ms. Boggs was not permitted to appeal the decision memorandum for the Big Mountain

19  Project.

20                                       **Discussion**

21           Although the Constitutional standing inquiry involves multiple prongs, as set forth above, the

22  parties focus only on whether the Plaintiffs have established injury-in-fact.  The *Summers* court guides

23  this Court to determine whether the standing declarations submitted by Plaintiffs are sufficient:

24       Affadavits submitted to the District Court alleged that organization member Ara
         Marderosian had repeatedly visited the site, that he had imminent plans to do so again,
25       and that his interests in viewing the flora and fauna of the area would be harmed if the
         Burnt Ridge Project went forward without incorporation of the ideas he would have
26       suggested if the Forest Service had provided him an opportunity to comment.  The
         Government concedes this was sufficient to establish Article III standing.

27

28  555 U.S. at 1149.  Although Mr. Marderosian's affidavit sufficiently alleged injury in fact, it was

                                          15

insufficient to establish standing because the specific project that allegedly harmed his interests was settled.  Because that project was "no longer an issue in the action," plaintiffs could not rely on Mr. Marderosian's affidavit to establish standing.  Thus, but for the settling of the specific project that was alleged to have caused Mr. Marderosian's harm, Mr. Marderosian's declaration was sufficient to establish Article III standing.

The *Summers* discussion also makes clear what is insufficient to establish injury-in-fact.  The Court found that Mr. Hensman's declaration did "not suffice for several reasons: because it was not tied to the application of the challenged regulations, because it does not identify any particular site, and because it relates to past injury rather than imminent future injury that is sought to be enjoined." 555 U.S. at 495.  Thus, to establish "actual or immediate injury", a plaintiff association member's alleged injury must be tied to the challenged regulations, identify a particular site that is at issue in the action, and relate to an imminent future injury, as opposed to a past injury.  In addition, the plaintiff association member must have a "firm intention to visit" the location at issue. *Summers*, 555 U.S. at 496.  "'[S]ome day' intentions–without any description of concrete plans, or indeed even any specification of *when* the some day will be–do not support a finding of 'actual or imminent' injury that our cases require." *Id*. (quoting *DOW*, 504 U.S. at 564) (emphasis in original).

Finally, the *Summers* court concluded that procedural injury alone is insufficient to establish standing to challenge the 215 Regulations.  Only "a person who has been accorded a procedural right to protect *his concrete interests* can assert the right without meeting all the normal standards for redressibility and immediacy." 555 U.S. 496 (emphasis in original).  The "deprivation of a procedural right without some concrete interest that is affected by the deprivation–a procedural right *in vacuo*–is insufficient to create Article III standing." *Id*.

To satisfy the injury-in-fact prong of the Constitutional standing inquiry to challenge the 215 Regulations, this Court concludes that a member of a plaintiff association must establish the following elements :(1) the alleged injury must be tied to a specific application of the challenged regulations or a specific Forest Service project; (2) that the specific Forest Service project challenge continues to be at issue in the action; (3) that the declarant visited the site of a specific Forest Service project, and (4) that the declarant's aesthetic or recreational interests would be harmed if that specific project went forward

16

1 without the incorporation of the declarant's ideas that would have been suggested had the Forest Service

2 provided him or her with the opportunity to comment or the opportunity to appeal.  In addition to these

3 four elements, a declarant who intends to establish imminent future injury must also specify when that

4 declarant intends to return to visit the site of the specific Forest Service project.[7]

5        The Forest Service argues that the Plaintiffs lack standing to raise a "facial" challenge to the 215

6 Regulations, because *Summers* limits judicial review to "as applied" challenges.    The Forest Service

7 argues that because Sections 215.4(a) and 215.12(f) do not authorize any specific projects, and because

8 *Summers* requires a plaintiff to challenge a specific project, then plaintiffs cannot challenge this

9 regulations.    This Court finds no support for this proposition.    The plaintiffs in

10 *Penguilly/Ruthenbeck/Summers* had set forth a facial challenge to the 215 Regulations, as noted in each

11 court opinion.  Had the Supreme Court wanted to preclude facial review of these regulations, the Court

12 would have so stated.  Nothing in the *Summers* decision demonstrates the Court's intent to limit review

13 of these regulations to an "as applied" challenge.  On the contrary, the Court's decision implies that Mr.

14 Marderosian's affidavit would have been sufficient to establish Article III standing had the Burnt Ridge

15 Project not been settled.  Although the Court concluded that a plaintiff must tie his or her injury to a

16 specific application of the challenged regulations to establish injury-in-fact to satisfy Article III, the

17 Court did not preclude a facial challenge to the regulations.

18        The Forest Service further argues that *Ruthenbeck* is not controlling.  The Forest Service submits

19 that Plaintiffs erroneously argue that the Ninth Circuit's decision in Ruthenbeck is controlling.  To the

20 extent *Ruthenbeck* concluded that a plaintiff may establish standing by relying on procedural injury

21 alone, that decision was overruled by *Summers*.  In addition, because the *Summers* court found that the

22 plaintiffs lacked standing, the *Ruthenbeck* court lacked jurisdiction to decide the merits of plaintiffs'

23

24       [7]        This Court has identified an additional standing requirement for those declarants who expect imminent, future injury either because a specific Forest Service project that has not yet been implemented or because that declarant has not visited the site that is the focus of the project since the project's implementation.  Such a declarant cannot simply state

25 in vague terms a desire to visit the site.  Rather, such a declarant must specify "when the some day will be" to "support a finding of the 'actual or imminent' injury that our cases require." *DOW*, 504 U.S. at 564.  This specified intention to visit the

26 site in the future may not always be required; to wit, in cases where the declarant's interests in observing nature in a specific project area have already been injured based on an alleged unlawful procedures that they were unable to oppose.  Presumably,

27 once a declarant has already visited the site and experienced the alleged injury tied to the regulations, the declarant need not express a future intent to re-injure himself or herself to establish standing.  This Court finds that each declaration submitted

28 satisfies this additional element as well as the others, as discussed more fully *infra*.

1   challenges to the 215 Regulations.  Accordingly, the Ruthenbeck decision was vacated to the extent that

2   it decided the merits of the plaintiffs' claims.  For these reasons, this Court agrees with the Forest

3   Service that *Ruthenbeck* is not controlling.[8]

4        Neither Plaintiffs nor the Forest Service give much attention to whether the standing declarations

5   submitted by Plaintiffs satisfies *Summer*s, beyond a general assertion that either "all" or "none" of the

6   declarations are sufficient.  Nevertheless, because this Court is of limited jurisdiction and must consider

7   whether it has jurisdiction before proceeding to consider further arguments of the parties.

8        As set forth above, this Court finds that Summers requires five elements to establish injury in

9   fact: (1) the alleged injury must be tied to a specific application of the challenged regulations or a

10  specific Forest Service project; (2) that the specific Forest Service project challenge continues to be at

11  issue in the action; (3) that the declarant visited the site of a specific Forest Service project, and (4) that

12  the declarant's aesthetic or recreational interests would be harmed if that specific project went forward

13  without the incorporation of the declarant's ideas that would have been suggested had the Forest Service

14  provided him or her with the opportunity to comment or the opportunity to appeal.

15       All of the declarations submitted by Plaintiffs satisfies these four elements.  Each declarant's

16  alleged injuries are tied to a specific application of the challenged regulations.  Each declarant has

17  identified a specific site in a national forest that he or she has visited frequently and has an active interest

18  in protecting, using and enjoying.  There is no indication that any of these challenged projects has been

19  settled or resolved.  The application of the challenged regulations is identified clearly through the name

20  and description of each Forest Service project, including its geographic location and what about the

21  project has harmed or threatens to harm the declarant.  Each declarant makes clear the type of concrete

22  harm that he or she has experienced or will experience because of the regulations.  These injuries are not

23  solely procedural in nature, but are specific to each declarant's recreational or aesthetic interests in

24  enjoying the use of that particular site.  In short, each declarant declares that "but for the allegedly

25  unlawful abridged procedures they would have been able to oppose the project that threatened to impinge

26  on their concrete plans to observe nature in that specific area." *Summers*, 555 U.S. at 497.  Accordingly,

27

28       [8] Although *Ruthenbeck* is not controlling, this Court may consider whether the reasoning of the *Ruthenbeck* court is persuasive in its analysis of the issues of ripeness and the merits of Plaintiffs' claims.

1   Plaintiffs establish that they have standing to challenge the 215 Regulations at issue in this action.

2   **Whether Plaintiffs' Challenge of the ARA is Ripe**

3   Next, the Court considers whether Plaintiffs' challenge to Sections 215.4(a) and 215.12(f) are

4   ripe for judicial review.  The ripeness doctrine serves "to prevent the courts, through avoidance of

5   premature adjudication, from entangling themselves in abstract disagreements over administrative

6   policies" and requires assessing "both the fitness of the issues for judicial decision and the hardship to

7   the parties of withholding court consideration." *Abbott Labs. v. Garner*, 387 U.S. 136, 148–49 (1967)

8   (quoted in *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 779–80 (9th Cir.2000)). "Ripeness

9   is a prudential doctrine intended, in part, to prevent judicial review of legal issues outside the limits of

10  Article III cases and controversies." *Ruthebeck*, 490 F.3d at 694.

11  The Forest Service argues that the facial challenge to the 215 Regulations is unripe because there

12  has been "insufficient development of the factual issues presented." *Ohio Forestry Ass'n v. Siera Club*,

13  523 U.S. 726, 733 (1998).  The Forest Service argues that judicial review at this point would require the

14  parties to engage in an abstract discussion about potential applications of the 215 Regulations "without

15  benefit of the focus of that particular logging proposal could provide." *Id*. The Forest Service contends

16  that Plaintiffs will suffer no injury, and the Court will gain necessary factual context, if consideration

17  of this matter is deferred until Plaintiffs elect to bring their challenge against an instance in which a

18  provision of the 215 Regulations are actually applied to them in a manner that causes them injury.  Thus,

19  the Forest Service is arguing that only an "as applied" challenge would be ripe, and that a facial

20  challenge to the regulations is not permitted unless Congress has authorized a facial challenge or the

21  regulations impose serious penalties for violations.

22  The Forest Service's arguments rely heavily on legal authorities related to pre-enforcement

23  challenges to regulations.  Indeed, pre-enforcement challenged to regulations are premature if the

24  regulations' effects are speculative and the record is incomplete. *See, e.g., Toilet Goods Assoc., Inc. v.*

25  *Gardner*, 387 U.S. 158, 163 (1967).  Without the development of a factual record of how the challenged

26  regulation may be enforced, the pre-enforcement challenge would fail the first prong of the *Abbot Labs*.

27  Test; namely, that it is not fit for judicial decision. *Id*. at 163-64; *see also, Ruthenbeck*, 490 F.3d at 695.

28  Pre-enforcement challenges may be permissible if the statute permits such a challenge, or if the penalties

19

1    imposed by implementations of those regulations are serious. Absent these circumstances, however, a

2    "regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the

3    APA" until there has been "some concrete action applying the regulation to the claimant's situation in

4    a fashion that harms him or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891

5    (1990) ("*NWF*").   The Forest Service's arguments are inapposite, because Plaintiffs have not initiated

6    a pre-enforcement challenge.  Unlike the authorities relied on the Forest Service, this action does not

7    precede implementation of the challenged rules.   Indeed, this challenge could not precede

8    implementation because, accordingly to *Summers*, Plaintiffs lacked standing to challenge the 215

9    Regulations unless it had been implemented against them in a specific and concrete way.  In this action,

10   Plaintiffs allege that the regulations at issue have been applied many times to the Plaintiffs.

11   Accordingly, this Court shall consider whether Plaintiffs action is ripe pursuant to authority related to

12   post-enforcement challenges.

13          As set forth in *NWF*, a regulation is not ripe for review unless there has been "some concrete

14   action applying the regulation to the claimant's situation in a fashion that harms him or threatens to harm

15   him." 497 U.S. at 891.  Plaintiffs have alleged, and supported in this motion, concrete actions in which

16   the Forest Service has applied the challenged regulations in a fashion that has allegedly harmed or

17   threatened to harm Plaintiffs and their members.   In each of the specific Forest Service projects or

18   permits cited in Plaintiffs' complaint, Plaintiffs specify that the Forest service failed to give them notice

19   or an opportunity to respond to the proposed project or permit and had no opportunity to appeal the

20   Forest Service's decision.  These facts establish that the challenged regulations have been implemented

21   against Plaintiffs in a concrete fashion and in a way that allegedly harmed them. 36 C.F.R. § 215.12 (f)

22   (categorically excluded actions not subject to appeal); 36 C.F.R. § 215.4(a) (categorical exclusions not

23   subject to procedures for legal notice or opportunity to comment).  Plaintiffs further declare that they

24   were harmed by the implementation of these allegedly unlawful regulations.  For these reasons, this

25   Court finds that Plaintiffs challenges to Sections 215.4(a) and 215.12(f) are ripe for judicial review.

26          **Whether Plaintiffs' Challenge to the ARA is Barred by the Statute of Limitations**

27          The Forest Service argues that even if Plaintiffs have standing, this action is barred by the statute

28   of limitations.  A six-year statute of limitations pursuant to 28 U.S.C. §2401(a) applies to actions brought

against the federal government pursuant to the APA. *Hells Canyon Pres. Council v. U.S. Forest Serv.,* 593 F.3d 923, 930 (9th Cir. 2010); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 713 (9th Cir. 1991). In an APA action, the six-year statute of limitations begins to accrue when the final agency action issues. 5 U.S.C. §704; *Crown Coat Front Co. v. United States*, 386 U.S. 503 (1967). The Forest Service points out that Sections 215.4(a) and 215.12(f) were enacted over eight years ago on June 4, 2003. Because this action was initiated more than six years after the Section 215 Regulations enacted, the Forest Service concludes that this action is time-barred.

Plaintiffs argue that this action is timely because the *Penguilly/Ruthenbeck/Summers* action tolled the statute of limitations under the doctrine of equitable tolling. Under the doctrine of equitable tolling, a plaintiff who seeks to bring a claim outside of the time frame may do so if "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991). "[W]hen external forces, rather than plaintiff's lack of diligence, account for the failure to file a timely claim, equitable tolling is proper." *Id.* at 596. Plaintiffs argue that they have diligently pursued their rights by litigating *Penguilly, Ruthenbeck and Summers.* Two of the current plaintiffs actively litigated this action for five years and nine months during the six-year time period. Plaintiffs argue that by filing the original complaint in the district court, the statute of limitations was tolled during the time the action was litigated. Because the Penguilly complaint was filed four months after the June 4, 2003 regulations were enacted, and the current action was filed 22 months after the Penguilly action was dismissed on July 9, 2009, Plaintiffs conclude that they filed this action in a timely manner.

The Forest Service argues that equitable tolling does not apply to 28 U.S.C.§ 2401(a), because the statute is jurisdictional in nature. For this position, the Forest Service relies on cases that do not apply 28 U.S.C. §2401(a) or non-binding decisions outside of the Ninth Circuit. For the following reasons, this Court rejects the Forest Service's position that 28 U.S.C. §2401(a) is jurisdictional.

In *Cedars-Sinai Med. Ctr. v. Shalala*, the Ninth Circuit ruled that 28 U.S.C. §2401(a) is not jurisdictional in nature and is subject to traditional exceptions, such as equitable tolling. 125 F.3d 765, 770 (9th Cir. 1997). In light of *John R. Sand & Gravel Co. v. United States*, 555 U.S. 130 (2008), more recent Ninth Circuit opinions have questioned the continued viability of the *Cedars-Sinai* conclusion.

*See, e.g., Aloe Vera of Am. Inc. v. United States*, 580 F.3d 867, 872 (9th Cir. 2009).  None, however, has overruled *Cedars-Sinai*.  *See, Marley v. United States*, 567 F.3d 1030, 1036 n.3 (9th Cir. 2009) ("We recognized that *Cedars-Sinai*...held that the six-year statute of limitations in §2401(a) is not "jurisdictional," but instead sets up a waivable procedural bar.  Section 2401(a) is not before us, so we need not decide here whether *Cedars-Sinai* can survive after *John R. Sand & Gravel*.").  Without precedent to the contrary, this Court is bound to follow the binding precedent in *Cedars-Sinai*.  Accordingly, the applicable statute of limitations may be tolled equitably.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements" (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Here, two of the current plaintiffs were pursuing their rights diligently during the time period, having filed their complaint initially within four months of the enactment of the 215 Regulations and pursuing that challenge in the district court, Ninth Circuit, and Supreme Court over a five year and ninth month period of time.  The Court further finds that "extraordinary circumstances" exist in this case that caused the current plaintiffs to file their action after the statute of limitations had elapsed.  In this unusual instant, the *Penguilly* plaintiffs were successful in their challenge of the 215 Regulations until the Supreme Court found that they lacked standing.  The district court invalidated the specific regulations challenged in the instant action, among others, severed them from the other 215 Regulations, and issued a nationwide injunction against their enforcement.  The Ninth Circuit affirmed the invalidity of Sections 215.4(a) and 215.12(f) and upheld the nationwide injunction prohibiting their implementation.  By virtue of that litigation, Sections 215.4(a) and 215.12(f) were stricken down and unenforceable for three years and eight months during the six-year period after their initial enactment–from the time the district court ruled them invalid on July 2, 2005 until Supreme Court found the plaintiffs lacked standing on March 3, 2009.  This Court finds that at the very least, and due to the extraordinary circumstances of the judicial invalidation and nationwide injunction prohibiting implementation of the regulations, the statute of limitations was tolled for three years and eight months.  Approximately 25 months passed between the time the Forest Service issued its Section 215 Regulations and the time that the *Penguilly* court invalidated them.  Approximately 26 months passed between the time the *Summers* court overturned *Ruthenbeck* and the time that Plaintiffs initiated the instant action.

1   Plaintiffs filed this action effectively 51 months after the Section 251 Regulations were enacted, well

2   within the six-year statute of limitations.  Accordingly, this action was filed in a timely manner.

3       As an alternative, this Court finds that this action was filed timely because the applicable statute

4   of limitations did not begin to accrue until the challenged regulations were applied to the plaintiffs. See

5   *Wind River Mining Corp*., 946 F.2d 710, 714-15 (9th Cir. 1991) (exception to the application of statute

6   of limitations for claims in which a plaintiff asserts an agency acted in excess of its statutory authority).

7   A "substantive challenge to an agency decision alleging lack of agency authority may be brought within

8   six years of the agency's application of that decision to the specific challenger." *Id*. at 716.  This

9   alternative accrual to the APA statute of limitations is applicable here where Plaintiffs challenge the

10  Section 215 Regulations by arguing that it exceeds the authority of its governing statute, the ARA.

11  Moreover, although Plaintiffs submit a facial challenge to the regulations, *Summers* made clear that

12  procedural injury is insufficient for a party to have standing.  Rather, as discussed more fully above, a

13  party only has standing if he or she has experienced a concrete injury tied to a specific implementation

14  of the allegedly unlawful regulations.

15      This position in *Summers* regarding standing, in addition to this *NFW* decision regarding

16  ripeness, supports application of the following rule of accrual in the instant action: "A cause of action

17  against an administrative agency 'first accrues' within the meaning of §2401(a), as soon as (but not

18  before) the person challenging the agency can institute and maintain a suit in court." *Spannaus v. United*

19  *States*, 824 F.2d 52, 56 (D.C. Cir. 1987) (citing *Crown Coat Front Co. V. United States,* 386 U.S. 503,

20  510-11 (1967); *see also, Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983), *cert. denied*,

21  469 U.S. 931 (1984).  Tautologically, and as the Court concluded in *Summers*, Plaintiffs could not

22  maintain a suit in court at the time the 215 Regulations, because procedural injury is insufficient to

23  establish standing.  Similarly, the Plaintiffs' facial challenge to the 215 Regulations was not ripe until

24  those regulations were implemented.  Thus, Plaintiffs ability to maintain a suit commenced after the

25  challenged regulations were implemented in such a way that allegedly caused them concrete harm.

26  Accordingly, the statute of limitations began to accrue for each plaintiff at the time of the allegedly

27  unlawful implementation of the challenged regulations.  Because Plaintiffs have initiated this action

28  within six years of each of the specified projects that allegedly caused their harm, this action is timely.

1      **Whether the Consolidated Appropriations Act of 2012 Renders this Action Moot**

2          After this action has been filed, and while the parties were briefing their cross-summary judgment

3  motions, the President signed into law the Consolidated Appropriations Act of 2012, Pub. L. No. 112-74

4  (December 23, 2011) ("Appropriations Act").  The Appropriations Act provides in relevant part:

5          **FOREST SERVICE PRE-DECISIONAL OBJECTION PROCESS**

6          SEC. 428.  Hereafter, upon issuance of final regulations, the Secretary of Agriculture,
           acting through the Chief of the Forest Service, shall apply section 105(a) of the Healthy
7          Forests Restoration Act of 2003 (16 U.S.C. 6515(a)), providing for a pre-decisional
           objection process, to proposed actions of the Forest Service concerning projects and
8          activities implementing land and resource management plans developed under the Forest
           and Rangeland Renewable Resources Planning Act of 1974 (16 U.S.C. 1600 et seq.) and
9          documented with a Record of Decision or Decision Notice, **in lieu of subsections (c),
           (d), and (e) of section 322 of Public Law 102-381 (16 U.S.C. 1612 note), providing**
10         **for an administrative appeal process[.]**

11  *Id*. (emphasis added).

12         In its reply,[9] the Forest Service argued that the Appropriations Act renders this action prudentially

13  moot.  The Forest Service submits that considerations of prudence and comity dictate that this Court

14  should stay its hand.  The Forest Service contends that this Court should find this action prudentially

15  moot because the government is in the process of amending or "doing away with altogether" the

16  challenged action.   The Forest Service argues that "although the challenged regulations remain

17  temporarily in place, they are effectively dead letter in light of [the Appropriations] Act's 'in lieu of'

18  language calling for the replacement of sections (c), (d), and (e) of the ARA."  The Forest Service invites

19  the Plaintiffs to challenge the regulations contemplated by the Appropriations Act, once a new

20  administrative record for those regulations is complete and other jurisdictional prerequisites are met.

21   But, according to the Forest Service, the Appropriations Act has changed the circumstances of this

22  action so as to render relief this Court might grant speculative and without practical effect.

23         As an initial matter, the Court notes that the Forest Service does not argue, and this Court does

24  not find, that this action is moot in the Constitutional sense.  A case is considered moot if, at some time

25  during the litigation process, the controversy posed by the plaintiffs' complaint is no longer "live."

26  _____

27         [9]Because the Forest Service raised this new issue in its reply, and because it was precluded from raising it in its
    opening brief (the Appropriations Act was passed after the opening brief was filed), this Court granted Plaintiffs the
    opportunity to file a sur-reply to address this issue.  Plaintiffs took advantage of that opportunity and responded to this
28  argument.

1   *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S.167, 189(2000).  "A case becomes moot whenever it

2   'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory

3   opinions on abstract propositions of law.'" *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir.

4   2001) (quoting *Hall v. Beals,* 396 U.S. 45, 48 (1969)).  "This means that...the plaintiff 'must have

5   suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by

6   a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank*

7   *Corp.*, 494 U.S. 472, 477 (1990)).  Thus, the basic question for determining mootness is whether "there

8   is a present controversy as to which effective relief can be granted." *Northwest Envtl. Def. Ct. v. Gordon*,

9   849 F.2d 1241, 1244 (9th Cir. 1988).  "A live controversy exists as long as effective relief may still be

10  available to counteract the effects of the violation." *Id.*  The parties do not dispute that the challenged

11  regulations are in force and the Forest Service continues to implement them.  Plaintiffs challenge to the

12  regulations, as implemented by the current regulations, remains live.

13          This Court declines the Forest Service's invitation to dismiss this action as being "prudentially

14  moot."  What affect the appropriations bill will have on the ARA, and when those changes will be

15  implemented, remains speculative.  By contrast, the controversy between the parties–Sections 215.4(a)

16  and 215.12(f) are impermissible pursuant to the ARA–continues to be live.  This Court "is not required

17  to dismiss a live controversy as moot merely because it may become moot in the future." *Hunt v.*

18  *Imperial Merchant Servs.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (declining to dismiss a case that might

19  be considered "anticipatorily moot" under doctrine of prudential mootness).

20          Moreover, the Appropriations Act does not change significantly the basis of Plaintiffs' claim.

21  The Appropriations Act appears to direct the Forest Service to amend the ARA to enforce a pre-

22  decisional objections process "in lieu of" the post-decisional appeals process as set forth in the current

23  ARA §322 (c), (d), and (e).  The Appropriations Act does not change ARA §322(a), which directs that

24  the Forest Service to "establish a notice and comment process for proposed actions of the Forest Service

25  concerning projects and activities implementing land and resource management plans developed under

26  the Forest and Rangeland Renewable Resources Planning[.]"  Plaintiffs contend that Sections 215.4(a)

27  and 215.12(f) are manifestly contrary to the ARA, because although ARA §322 (a) directs the Forest

28  Service to establish a notice and comment process "for all proposed actions of the Forest Service

1  concerning projects and activities implementing land and resource management plans," Sections

2  215.4(a) and 215.12(f) exclude from notice and comment those projects and permits that are

3  categorically excluded under NEPA. Thus, even if ARA §§322(c), (d), (e) are amended pursuant to the

4  Appropriations Act, the question presented in this action as presented remains live. Moreover, the Court

5  is not certain that the Appropriations Act will render this question moot, because there is no indication

6  that the challenged regulations will change to include the categorically-excluded projects and permits

7  in the pre-decisional objections scheme that will be adopted eventually. Accordingly, this Court denies

8  the Forest Service's motion to dismiss this action based on the notion of prudential mootness.

9  CONCLUSION AND ORDER

10    For the foregoing reasons, this Court

11    1.  GRANTS summary adjudication in favor of Plaintiffs on the following issues:

12      A.  Plaintiffs have standing to pursue this action; and

13      B.  Plaintiffs' post-implementation challenge to Sections 215.4(a) and 215.12(f) is

14        ripe for review; and

15    2.  DENIES the Forest Service's summary adjudication motion in full as to all jurisdictional

16      issues, including the above issues and the following alternative issues raised by the

17      Forest Service:

18      A.  The statute of limitations does not bar this action; and

19      B.  The Appropriations Act does not render this action prudentially moot.

20  IT IS SO ORDERED.

21  **Dated:**  **March 19, 2012**      **/s/ Lawrence J. O'Neill**
              UNITED STATES DISTRICT JUDGE